UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


LESHAWN THOMAS, et al.,                                    PLAINTIFFS


v.                                          CIVIL ACTION NO. 3:12-CV-00449-CRS


LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT, et al.,                                  DEFENDANTS


Memorandum Opinion

I.      Introduction

Leshawn Thomas and Edwonta Forrest (the "Plaintiffs") filed this lawsuit under 42

U.S.C. § 1983.  Compl. 1, ECF No. 1.  The remaining defendants are Officer Joseph Pence and

Officer Thomas Grace (the "Defendants").  The Defendants separately move for summary

judgment on all claims.  Grace Mot. Summ. J., ECF No. 63; Pence Mot. Summ. J., ECF No. 64.

The Plaintiffs move to compel discovery.  Pls.' Mot., ECF No. 69.

The Court will deny the Plaintiffs' motion to compel.  The Court will grant in part and

deny in part the Defendants' motions for summary judgment.  Upon entry of the Court's order,

the only claim remaining is Thomas's claim against the Defendants as alleged in Count III.

II.     Plaintiffs' motion to compel

        A.  Procedural history

On July 31, 2012, the Plaintiffs filed this lawsuit.  Compl. 1.  On November 7, 2014, the

Court entered an agreed order of voluntary dismissal, with prejudice, as to Louisville/Jefferson

County Metro Government, the Louisville Metro Police Department, and Ishmon F. Burks, Jr.

Order Nov. 7, 2014, ECF No. 37.

The Court's original discovery deadline was December 16, 2013.  Order Feb. 2, 2013, ECF No. 11.  The Court extended the discovery deadline to March 31, 2014 and then to May 30, 2014, by agreement of the parties.  Order Oct. 23, 2013, ECF No. 17; Order Jan. 15, 2014, ECF No. 18.

On March 27, 2015, the magistrate judge extended the fact discovery deadline to June 26, 2015 for the Defendants only because the Plaintiffs had disclosed Thomas's medical records five months after the discovery deadline.  Order Mar. 27, 2015, ECF No. 50; *see also*, Order Aug. 12, 2015, ECF No. 57 (denying the Plaintiffs' motion to add claims against Officer Chad Johnson after discovery ended as untimely and futile).

On November 30, 2015, the Defendants separately moved for summary judgment on all claims.  Grace Mot.; Pence Mot.  The Plaintiffs did not respond to the Defendants' motions.  On April 5, 2016, the Plaintiffs moved to compel discovery.  Pls.' Mot.  On April 19, 2016, the Court ordered the Plaintiffs to respond to the Defendants' motions within fourteen days.  Order Apr. 5, 2016, ECF No. 70.  On April 27, 2016, the Plaintiffs filed two identical briefs in response to the Defendants' motions for summary judgment.  Pls.' Resp., ECF No. 72; Pls.' Resp., ECF No. 73.  Because the Plaintiffs' briefs are identical, the Court will cite only to the first submitted.

B.  Legal standard

The scope of discovery is within the Court's broad discretion.  *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998).  The Court may deny a motion to compel as untimely.  *See, e.g.*, *Johnson v. Hensley*, 62 F. App'x 85, 86 (6th Cir. 2003) (district court did not abuse its discretion in denying a motion to compel filed two years after the defendants responded to discovery); *Trimbur v. Ky. Lottery Corp.*, 64 F.App'x 970, 975 (6th Cir. 2003) (district court did not abuse its discretion in denying motion to compel filed two weeks before trial).

C. Application

The Plaintiffs seek an order compelling the Defendants to serve a response to their second request for production of documents. Pls.' Mot. 1. The Plaintiffs received the allegedly deficient responses around May 23, 2013, nearly three years before filing this motion to compel. *Id.* Now, the Plaintiffs argue these responses were deficient because they did not include the CAD report[1] or 911 call. *Id.* The Defendants jointly ask the Court to deny the motion as untimely, *inter alia*. Defs.' Resp. 2, ECF No. 71. The Plaintiffs filed the motion to compel over two years after the original discovery deadline, nearly one year after the Defendants' extended discovery deadline, and three months after the Plaintiffs' deadline for responding to the Defendants' motions for summary judgment, which the Plaintiffs ignored until ordered by the Court to file responses.

The Court will deny the motion to compel as untimely.

III.    Background

The Court will detail the facts in the light most favorable to the Plaintiffs, the nonmoving party.

On January 2, 2012, around 9:30 or 10:00 in the evening, Louisville Metro Police Department officers responded to a report of an armed home invasion at 4117 River Park Drive in Louisville.[2] One of the responding officers was Officer Johnson, who is not a party to this case. The victims of the alleged home invasion told Officer Johnson that the suspects fled out of

---

[1] A CAD report is a report generated by a "computer-aided dispatch" system. Defs.' Resp. Mot. Compel 2 n.3, ECF No. 71.

[2] Johnson Statement 2, ECF No. 64-2; Pence Dep. 51, ECF No. 64-4; *see*, Grace Dep. 39, ECF No. 64-3 (Officer Grace could not remember whether it was a home invasion or a shooting, but the officers were responding to "a violent crime involving someone's house.").

the back of the house and may have headed toward the alley.[3]  Officer Johnson went to the alley

where he saw footprints in the snow, and the canine assisting them lost track of the scent.[4]  In the

alley, Officer Johnson found a white four-door vehicle with a warm hood parked at the rear of

the house at 4229 River Park Drive.[5]

Officer Johnson radioed to the other responding officers that he found a car with a warm

hood and an empty gun holster in the driver's seat.[6]  He also told the other responding officers

that he found two subjects, at least one of whom was wearing clothing consistent with the

description of the home invasion suspects.[7]

Around that time, the Plaintiffs came out the back of the house at 4229 River Park Drive

toward the white car.[8]  The Plaintiffs were leaving the house to get food.[9]

Officer Johnson pointed his flashlight and told the Plaintiffs to stop and put their hands

up.[10]  Thomas told Officer Johnson that he had a gun and was licensed to carry it.[11]  Officer

Johnson patted down Thomas and took his gun.[12]  Officer Johnson unloaded the gun and put it

on the hood of a green car parked next to the white car.[13]

---

[3] Johnson Statement 2, ECF No. 64-2; *see also*, Grace Dep. 41.
[4] Johnson Statement 2; Grace Dep. 44.
[5] Pl.'s Admis., ECF No. 64-9; Johnson Statement 2.
[6] Pence Dep. 54.
[7] Johnson Statement 3.
[8] Thomas Dep. 30, ECF No. 64-6.
[9] Thomas Dep. 29 (testifying that the Plaintiffs were going to Kroger to buy food); *but see*, Forrest Dep. 22, ECF No. 64-7 (testifying that they were going to Tony's convenience store for pizza or Hot Pockets).
[10] Johnson Statement 3.
[11] Thomas Dep. 34; Forrest Dep. 30.
[12] Johnson Statement 3; Prof. Stds. Rep. 10; Thomas Dep. 34 – 35; *but see*, Forrest Dep. 29 (testifying that "they" patted down the Plaintiffs).
[13] Thomas Dep. 35; Forrest Dep. 32.

Thomas's right arm was in a cast.[14]  Officer Johnson cuffed Thomas's left arm to Thomas's belt loop but left his casted arm free.[15]  Officer Johnson called for backup.[16]  Officer Grace walked up about two minutes later.[17]  Officer Johnson told Officers Grace and Pence that Thomas had a gun.[18]  After Officer Grace arrived, Officer Johnson cuffed Forrest.[19]

Officer Grace pointed his gun at Thomas when he approached.[20]  Thomas asked Officer Grace to stop pointing his gun at his face.[21]  Officer Grace told Thomas to shut his "f'ing" mouth.[22]  About four minutes later, Officer Pence walked up.[23]  Officer Pence had his gun drawn.[24]  After Officer Grace put his gun down, Thomas and Officer Grace continued to argue and call each other names.[25]  Both Officer Grace and Thomas called each other "bitch" and used the word "fuck."[26]

---

[14] Thomas Dep. 42.

[15] Thomas Dep. 36; Johnson Statement 3; *see*, Pence Dep. 59 (testifying that the Plaintiffs were already handcuffed when he arrived); *but see*, Grace Dep. 49 ("I do believe it was either myself or Officer Pence that handcuffed Mr. Thomas and I can't remember which – which one of the two of us.").

[16] Thomas Dep. 36.

[17] Thomas Dep. 36 – 37.

[18] Thomas Dep. 37; Pence Dep. 55; Grace Dep. 52.

[19] Thomas Dep. 42.

[20] Thomas Dep. 38; Forrest Dep. 25.  Forrest testified that "both officers" arrived at the same time, and both held their guns pointed at the Plaintiffs.  Forrest Dep. 25.  When asked whether he could say which officer took which action, Forrest replied, "No."  *Id.*

Officer Grace told internal investigators that he did have his gun in his hand when he approached Thomas.  Prof. Stds. Rep. 8.  At his deposition, he could not remember whether he was holding his gun.  Grace Dep. 51.  Officer Pence testified that when he arrived no one was holding a gun.  Pence Dep. 59.  Officer Johnson said he did not remember either Officer Pence or Officer Grace holding their guns when they approached.  Johnson Statement 4.

[21] Thomas Dep. 40.

[22] Thomas Dep. 41.

[23] Thomas Dep. 37; Pence Dep. 56.

[24] Forrest Dep. 25; *contra*, Pence Dep. 59.

[25] Thomas Dep. 43 – 44.

[26] Thomas Dep. 125; *see* Pence Dep. 77 (testifying that Thomas was cussing); *contra*, Pence Dep. 65 (Pence did not hear Grace use an expletive); *but see*, Prof. Stds. Rep. 8 (Grace did not remember whether he used profanity).

January 2 was a cold night, and there was snow on the ground.[27]  Thomas asked for his coat, and Officer Grace got it out of the car.[28]  Officer Grace told Thomas to stop being a "Sally."[29]  Thomas told Officer Grace to search his coat before putting it on him.[30]  Officer Grace dragged the coat through the snow that was on the hood of the car.[31]  Then, Officer Grace put the coat on Thomas's shoulders and said, "[H]ere you go, princess."[32]  Thomas took off the coat with his free arm and put it on the back of the green car.[33]  After Thomas took off the coat, Officer Grace threw the coat back in Thomas's car.[34]

Officer Johnson told Thomas not to move.[35]  Using his hand, Officer Grace tried to push Thomas's head down on the back of the car.[36]  Thomas pushed back against Officer Grace's hand.[37]  Officer Grace told Thomas to "stop resisting."[38]  Officer Grace let go of Thomas's head.[39]  Thomas reached up with his casted arm and tightened his hat.[40]  Officer Pence told Thomas, "don't move."[41]  Officers Grace and Pence also said, "[Y]ou need to stop moving your

---

[27] Forrest Dep. 28.
[28] Thomas Dep. 44.
[29] Pence Dep. 61.
[30] Thomas Dep. 45.
[31] Forrest Dep. 42.  Natari Hamblin, Thomas's girlfriend, watched these events from the back of the house. Hamblin told internal investigators that Grace dragged the coat through the snow before putting it on Thomas's shoulders.  Prof. Stds. Rep. 7.  Thomas testified that Officer Grace drug the coat through the snow on the car *after* Thomas took it off.  *See* Thomas Dep. 47 – 48.  Grace said that after Thomas shrugged off the coat, "I put it back on top of the car."  Grace Dep. 64.
[32] Thomas Dep. 46.
[33] Thomas Dep. 46.
[34] Thomas Dep. 48.
[35] Thomas Dep. 49.
[36] Thomas Dep. 50.
[37] Thomas Dep. 50.
[38] Thomas Dep. 50.
[39] Thomas Dep. 50.
[40] Thomas Dep. 50.
[41] Thomas Dep. 50.

arm," and "We can feel threatened by it."[42]   Thomas told them that "there's nothing to feel

threatened" about because if he hit them with the cast, "It's going to hurt me more than it's going

to hurt you all."[43]

Officer Grace again tried to push Thomas's head down on the car.[44]   Thomas pushed

back, and Officer Grace let go again.[45]   Officer Grace said, "I told you not to move your f'ing

arm."[46]   Officer Grace grabbed Thomas's casted arm and around Thomas's rib cage and took

Thomas to the ground using an arm bar control hold.[47]   An arm bar control hold is where an

officer places a hand on a suspect's arm and the other hand around their torso.[48]   Officer Grace

did not take Thomas to the ground because he was threatening, but because he did not follow his

order to stop moving his arm.[49]

While holding Thomas on the ground, Officer Grace placed his knee in Thomas's neck.[50]

Officer Pence joined the struggle between Thomas and Officer Grace.[51]   Officer Pence hit

Thomas on his side with a closed fist about six times.[52]   Officer Grace banged Thomas's cast on

---

[42] Thomas Dep. 51; Forrest Dep. 45; Pence Dep. 61 – 62.  Grace testified that Thomas
was waving his cast "violently," and "we were uncertain if he was trying to assault us or if he
was just animated and agitated with – with our interaction."  Grace Dep. 68.
[43] Thomas Dep. 52; Forrest Dep. 45.
[44] Thomas Dep. 52.  Grace testified that he did not remember pushing Thomas's head
down on the car.  Grace Dep. 72; *accord*, Pence Dep. 64.
[45] Thomas Dep. 53.
[46] Thomas Dep. 53.
[47] Grace Dep. 76; Thomas Dep. 53; Pence Dep. 62.
[48] Grace Dep. 76.
[49] Grace Dep. 75.
[50] Thomas Dep. 57; *see* Pence Dep. 62 (Grace's knee was between Thomas's shoulders);
*contra*, Grace Dep. 78 (testifying that he put his knee in Thomas's back).
[51] Thomas Dep. 56.
[52] Thomas Dep. 56; Forrest Dep. 50.

the ground and pulled Thomas's hair, which was in dreadlocks.[53]  While Thomas was on the

ground, Officer Grace told him to shut up before he breaks his neck.[54]

Thomas was on the ground for about five minutes.[55]  Forrest saw one of Thomas's

dreadlocks on the ground.[56]  Thomas did not notice that he was missing a dreadlock until later

that night.[57]

Officer Pence helped Thomas stand.[58]  The officers took Thomas and Forrest to the alley

for a show up identification.[59]  In the show up identification, the victim of the alleged home

invasion cleared both Forrest and Thomas.[60]  After that, the Plaintiffs were released.[61]  The entire

encounter lasted about forty minutes.[62]  Thomas suffered a fractured knee cap, which he

attributes to Officer Grace's control hold.[63]

IV.    Defendants' motions for summary judgment

The Defendants separately move for summary judgment on all claims.  Counts I through

V of the Plaintiffs' complaint allege deprivation of rights claims: 1) unreasonable search and

seizure; 2) unlawful detention and confinement; 3) cruel and unusual punishment; 4) conspiracy;

and 5) refusal or neglect to prevent harm.  Compl. 9 – 15.  Counts VI through XII allege state

law claims: 6) false imprisonment; 7) assault; 8) battery; 9) intentional infliction of emotional

---

[53] Thomas Dep. 58.
[54] Thomas Dep. 59.
[55] Thomas Dep. 59.
[56] Forrest Dep. 88; *contra*, Grace Dep. 88 (denying that he pulled out a dreadlock); but see, Pence Dep. 67 (Pence could not remember whether Grace pulled out a dreadlock or if he saw a dreadlock on the ground).
[57] Thomas Dep. 71.
[58] Thomas Dep. 60.
[59] Grace Dep. 61.
[60] Thomas Dep. 61.
[61] Forrest Dep. 58 – 59; Thomas Dep. 63 – 64.
[62] Thomas Dep. 66.
[63] Prof. Stds. Rep. 7; *see also*, Ind. Med. Exam. 2, ECF No. 72-6.

distress; 10) negligent infliction of emotional distress; 11) negligence; 12) gross negligence. *Id.* at 16 – 23. The complaint alleges individual and official capacity liability against both Defendants.

The Court will discuss the summary judgment standard, principles of qualified immunity, and official capacity liability. Then, the Court will discuss each of the Plaintiffs' claims, in turn.

### A. Summary judgment standard

A party moving for summary judgment must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* The Court must construe all evidence in the light most favorable to the nonmoving party. *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012). The Court must also draw all factual inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A plaintiff abandons a claim when the plaintiff fails to respond to summary judgment. *Phillips v. Ternes*, 2014 WL 4293003 *1, *2 (W.D. Ky. 2014).

### B. Principles of qualified immunity

"In a § 1983 action, the plaintiff must demonstrate a deprivation of a right secured by the Constitution or by the Constitution or laws of the United States caused by a person acting under color of state law." *Westmoreland v. Sutherland*, 662 F.3d 714, 718 (6th Cir. 2011); *see also*, 42 U.S.C. § 1983.[64] Defendants are entitled to qualified immunity from civil suit as long as "their

---

[64] The statute says,

> Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects,

conduct does not violate clearly established statutory or constitutional rights." *Bouggess v. Mattingly*, 482 F.3d 886, 887 (6th Cir. 2007) (citing *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability … it is effectively lost if a case is erroneously permitted to go to trial." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

On the other hand, "[q]ualified immunity does not protect those who knowingly violate the law." *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 824 (6th Cir. 2007).

> A plaintiff who brings a § 1983 action against such an official bears the burden of overcoming the qualified immunity defense. At the summary judgment stage, the plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established. In so doing, the plaintiff must, at a minimum, offer sufficient evidence to create a genuine issue of fact, that is, evidence on which a jury could reasonably find for the plaintiff.

*Thompson v. City of Lebanon, Tenn.*, No. 14-5711 1, 3 (6th Cir. Jul. 26, 2016) (internal citations, quotation marks, and brackets omitted). In its discretion, the Court may decide either prong of the qualified immunity analysis first. *Pearson*, 555 U.S. at 236. "Each defendant's liability must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). "If the district court determines that the plaintiff's evidence would reasonably support a jury's finding that the defendant violated a clearly established right, it must deny summary judgment." *Thompson*, No. 14-5711 at 4.

### C. Official capacity liability

---

> or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.
> 42 U.S.C. § 1983.

The Plaintiffs sued the Defendants in their individual and official capacities on all claims. A suit against a person in their official capacity is the equivalent of suing the person's employer. *Lambert v. Hartman*, 517 F.3d 433, 439 – 40 (6th Cir. 2008). The Court should treat an official capacity suit the same as a suit against the entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "While an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Id.* For this reason, courts in this district routinely dismiss official-capacity claims against police officers when the government entity remains a party. *See, e.g.*, *Scherzinger v. Bolton*, 2013 WL 3821734 *1, *4 (W.D. Ky. 2013).

Here, the Court already entered an agreed order of voluntary dismissal, with prejudice, for Louisville/Jefferson County Metro Government, Louisville Metro Police Department, and Ishmon Burks. Order Nov. 7, 2014. The agreed order left only two remaining defendants: Officers Pence and Grace. *Id.* Without a government entity from which the Plaintiffs could recover a damages judgment in an official-capacity suit, the Plaintiffs' official-capacity claims against the Defendants fail. *See Graham*, 473 U.S. at 166.

The Court will grant summary judgment to the Defendants on all official capacity claims.

> D.  Count I: unreasonable search and seizure

Count I is a cause of action under 42 U.S.C. § 1983 for an unreasonable search and unreasonable seizure. Compl. ¶ 38.

The Fourth Amendment secures the right of the people against unreasonable search and seizure. U.S. Const. amend. IV. The Fourth Amendment's protections apply against the states

through the Fourteenth Amendment. *Camara v. Mun. Ct. of the City & County of San Francisco*, 87 S.Ct. 523, 529 (1967).

1. <u>Unreasonable search</u>

Although Count I alleges an "unreasonable search," the Plaintiffs' responses to summary judgment did not address that claim at all. Thus, the Plaintiffs have abandoned their unreasonable search claim.

2. <u>Unreasonable seizure</u>

The Plaintiffs admit that the officer who originally stopped them was Officer Johnson. Pls.' Resp. 5. Officer Johnson was the one who found the white four-door car with a warm hood and then found the Plaintiffs leaving the back of the house at 4229 River Park Place. Officer Johnson was the one who patted down both of the Plaintiffs and took Thomas's gun.

Officer Johnson is not a party to this case. Therefore, whether Officer Johnson lawfully stopped the Plaintiffs is not relevant because the Defendants can only be liable for their own conduct. *See Binay*, 601 F.3d at 650.

Under the Fourth Amendment, "not all seizures of the person must be justified by probable cause to arrest for a crime." *Florida v. Royer*, 460 U.S. 491, 498 (1983). Under *Terry v. Ohio*,

> where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

391 U.S. 1, 30 – 31 (1968). A police officer may "briefly" detain someone if the officer has a "reasonable suspicion, supported by articulable facts, that criminal activity has occurred or is

about to occur." *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005). Still, "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Royer*, 460 U.S. at 500.

Here, Officer Johnson briefly detained Thomas and Forrest while he was investigating an armed home invasion in the neighborhood. Thomas told Officer Johnson he had a gun, and Officer Johnson took the gun and removed the magazine. Then, Officers Grace and Pence arrived. Once the victim of the alleged home invasion victim was unable to identify either Thomas or Forrest, Thomas and Forrest were free to leave.

The Plaintiffs argue that even though Johnson was the one who stopped them, Officers Pence and Grace are liable for an unreasonable seizure because "1) [Officer Grace][65] took control of Thomas, and detained him for an unreasonable amount of time. 2) Officer Grace handcuffed Thomas. And 3) Officer Grace effectuated the arrest of Plaintiff LeShawn Thomas without probable cause." Pls.' Resp. 10.

These arguments fail. First, Thomas testified that the encounter with the Defendants lasted about forty minutes. Thomas Dep. 66. The Plaintiffs point to no case in which a Court has held that detaining two people in an investigatory stop for forty minutes violates clearly established constitutional law, especially when one of those two people had a gun and both of them were in the same neighborhood where the police were investigating an armed home invasion.

Second, Thomas's own testimony contradicts the Plaintiffs' assertion that Officer Grace handcuffed Thomas. Thomas testified that Officer Johnson handcuffed him before Officers Grace and Pence arrived as backup. Thomas Dep. 36.

---

[65] The brief says that Officer Pence took control of Thomas, but this appears to be an error. Pls.' Resp. 10.

Third, even if Officer Grace had been the one to handcuff Thomas, the Defendants did not argue that Thomas's seizure was lawful because he was subject to a lawful arrest supported by probable cause.   Instead, the Defendants argued that Thomas's seizure was lawful because he was detained in a brief investigatory stop supported by reasonable suspicion.   *See, e.g.*, Grace's Mem. Supp. Mot. Summ. J. 10, ECF No. 63-1; Pence's Mem. Supp. Mot. Summ. J. 15, ECF No. 64-1.  The Fourth Amendment does not require that probable cause justify every seizure.  A police officer may stop an individual for a brief investigatory detention, and the officer needs only reasonable suspicion to justify that stop.

The Plaintiffs have not shown that a genuine issue of material fact exists for whether the Defendants clearly violated established constitutional law in stopping the Plaintiffs.  Having found no genuine issue for whether the Defendants unreasonably seized the Plaintiffs, the Court need not address whether the right was clearly established.  *See Pearson*, 555 U.S. at 236.

The Defendants are entitled to qualified immunity from suit on Count I of the complaint. The Court will grant summary judgment to the Defendants on Count I of the complaint.

### E. Count II: unlawful detention

Count II of the Plaintiffs' complaint alleges "unlawful and malicious detention and confinement" in violation of their rights under the Fourth, Fifth, and Fourteenth Amendments. Compl. ¶ 44.  Additionally, Count II alleges that the Plaintiffs' confinement was in "reckless and/or callous indifference" to their federally protected rights.  *Id.* ¶ 45.

The Plaintiffs argue that they were arrested without probable cause.  Pls.' Resp. 14.  The Plaintiffs have pointed to no case suggesting that a police officer cannot handcuff a person during an investigatory stop.   Nor have they pointed to any case suggesting that a stop lasting forty minutes amounts to an arrest.  As explained above in Section IV(D)(2), police officers do

not violate the Fourth Amendment when they detain individuals for brief investigatory stops supported by reasonable suspicion.

The Plaintiffs have not shown that a genuine issue of material fact exists for whether the Defendants violated clearly established constitutional law in detaining the Plaintiffs for forty minutes. Having found no genuine issue for whether the Defendants unreasonably detained the Plaintiffs, the Court need not address whether the right was clearly established. *See Pearson*, 555 U.S. at 236.

The Defendants are entitled to qualified immunity from suit on Count II of the complaint. The Court will grant summary judgment to the Defendants on Count II of the complaint.

## F. Count III: cruel and unusual punishment

Count III alleges that the Defendants inflicted "cruel and unusual punishment" on the Plaintiffs in violation of the "Fifth, Eighth, and Fourteenth Amendments." Compl. ¶ 51.

"Section 1983 does not confer substantive rights; rather, it is only a means to vindicate rights already conferred by the Constitution or laws of the United States." *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013). A plaintiff may bring an excessive force claim under the Fourth, Eighth, and Fourteenth Amendments. *Id.* The Fourth Amendment bars excessive force against free citizens; the Eighth Amendment bars excessive force against convicted persons; and the Fourteenth Amendment bars excessive force against pretrial detainees. *Id.*

The Defendants argue that the cruel and unusual punishment claim brought under the Eighth Amendment fails as a matter of law because the Eighth Amendment protects convicted persons, not persons briefly detained during investigatory stops. Grace's Mem. 12 – 15; Pence's Mem. 17 – 18. Both Defendants argued that if the cruel and unusual punishment claim was based on a denial of medical care under the Fourteenth Amendment, the Plaintiffs failed to

establish their "deliberate indifference" to Thomas's injuries. Grace Mem. 14 – 15; Pence Mem. 17. The Plaintiffs did not respond to this argument and have thus abandoned it.

Grace argued that if the cruel and unusual punishment claim was based on excessive force under the Fourteenth Amendment, the Plaintiffs failed to establish that his actions shocked the conscience. Grace Mem. 13. Grace also argued that his use of force against Thomas was objectively reasonable under the Fourth Amendment standard. Grace Reply 8 – 11, ECF No. 76. Pence likewise argued that his use of force was objectively reasonable under the Fourth Amendment standard. Pence Reply 4 – 5, ECF No. 77.

Instead of clarifying the Amendment underlying the "cruel and unusual punishment" claim, the Plaintiffs argue that the Defendants are liable for using excessive force during their detention. *See, e.g.*, Pls.' Resp. 14 – 15 ("Any use of force whatsoever on Plaintiffs would be excessive.").

A Fourteenth Amendment excessive force claim requires a "substantially higher showing" than one brought under the Fourth Amendment. *Burgess*, 735 F.3d at 472. "Generally, to constitute a Fourteenth Amendment violation, an official's conduct must 'shock the conscience.'" *Shreve v. Franklin Cnty., Oh.*, 743 F.3d 126, 134 (6th Cir. 2014).

The Defendants characterize the Plaintiffs' status during the encounter as pretrial detainees. Pence Mem. 17; Grace Mem. 14 ("To the extent Plaintiffs purport to proceed under the Fourteenth Amendment, Defendants['] actions in no way 'shock the conscience.'"). The Court disagrees with the Defendants' assessment of the Plaintiffs' status.

The Fourth Amendment protects against unreasonable seizures, including excessive force. *Graham v. Connor*, 490 U.S. 386, 394 (1989). A plaintiff properly invokes the Fourth Amendment's guarantee against unreasonable seizure when alleging excessive force during an

investigatory stop as a free citizen. *Id.* at 394; *see also*, *Coley v. Lucas Cnty., Oh.*, 799 F.3d 530, 537 (6th Cir. 2015). A plaintiff may properly invoke the Fourth Amendment's protections against excessive force through pretrial booking and even until a probable cause hearing has been completed. *Coley*, 799 F.3d at 537; *Aldini v. Johnson*, 609 F.3d 858, 860 (6th Cir. 2010).

As discussed above, the Defendants engaged the Plaintiffs in a brief investigatory stop in order to determine whether they were involved in the nearby alleged home invasion. They were not pretrial detainees because they had not been booked or completed a probable cause hearing. *See Coley*, 799 F.3d at 537. Rather, the Plaintiffs were free citizens subject to an investigatory stop. Therefore, as the Plaintiffs were free citizens, the Fourth Amendment governs whether the Defendants used excessive force against them.

The Supreme Court has said that "all claims" that law enforcement officers have used excessive force in an investigatory stop should be analyzed under the Fourth Amendment reasonableness standard. *Id.* at 395. Given this guidance from the Supreme Court, the Court will analyze Count III under the Fourth Amendment's reasonableness standard because the Defendants argued that their conduct was objectively reasonable under that standard.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396. "In determining whether excessive force was used, courts must ask whether the officer's actions, in light of the totality of the circumstances, were objectively reasonable." *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001). The Court balances

> the nature and quality of the intrusion on a plaintiff's Fourth Amendment interest against the countervailing governmental interests at stake. In doing so, three factors guide our analysis: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight.

*Burgess*, 735 F.3d at 472 – 73 (internal citations, quotation marks, and brackets omitted).

A plaintiff may "allege use of excessive force even where the physical contact between the parties did not leave excessive marks or cause extensive physical damage." *Coley*, 799 F.3d at 539 (quoting *Ingram v. City of Columbus*, 185 F.3d 579, 597 (6th Cir. 1999)). "The extent of the injury inflicted is not crucial to an analysis of a claim for excessive force in violation of the Fourth Amendment." *Coley*, 799 F.3d at 539 (internal quotation marks and brackets omitted). Thus, "while an excessive use of force claim *may* be established through evidence of severe injury or physical contact, this Circuit has not required that this *must* be the case." *Morrison v. Bd. of Tr. of Green Twp.*, 583 F.3d 394, 407 (6th Cir. 2009) (rejecting police officer's argument that the court of appeals should impose a blanket *de minimus* injury requirement for excessive force claims). "Under some circumstances, bruising alone can be sufficient to support an excessive force claim." *Smith v. City of Wyoming*, 821 F.3d 697, 718 (6th Cir. May 18, 2016). "Even so, not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396.

## 1. Forrest's Count III claim

Forrest's Count III claim fails. The Defendants did not take Forrest to the ground. Forrest Dep. 40. Other than the period in which he was handcuffed, no officer laid hands on Forrest. *Id.* at 48.[66] Indeed, Count III of the complaint refers to "injuries inflicted upon Plaintiffs," but focuses only on Thomas's injuries. Compl. 12. The Plaintiffs' response to

---

[66] In Forrest's deposition, opposing counsel asked, "I believe you have already answered this but you were never physically harmed by an officer; is that a fair statement?" Forrest Dep. 48. Forrest answered, "No." *Id.* Counsel had not previously asked whether Forrest was physically harmed by an officer. The Plaintiffs have not pointed to any record evidence that would suggest that the Defendants used any force against Forrest, and the Court need not search the record on their behalf. *See Pry v. Donahue*, 2016 WL 1574148 *1, *3 n.4 (W.D. Ky. Apr. 18, 2016).

summary judgment focused on the force used on Thomas, and Thomas's injuries. Pls.' Resp. 14 – 15. The Court finds that Forrest has waived opposition to summary judgment on Count III.

The Defendants are entitled to qualified immunity from suit on Forrest's claim in Count III. The Court will grant summary judgment to the Defendants on Forrest's claim in Count III.

### 2. Thomas's Count III claim

As to the first factor, the Defendants were investigating a serious crime: an armed home invasion. Additionally, the Defendants knew that Thomas had previously been armed. This factor weighs in the Defendants' favor.

As to the third factor, Grace argues that Thomas "continued to resist and be non-compliant, even after Officer Grace told Thomas to stop resisting." Grace Reply 11. Viewing the facts in the light most favorable to Thomas, however, Officer Grace's order to "stop resisting" occurred when Grace was pushing Thomas's head on the back of the car. Thomas admitted that he pushed back against Grace's hand, and when Grace let go, Thomas adjusted his hat. Again, the officers warned Thomas not to move. Grace pushed Thomas's head against the car again, and Thomas again pushed back. When Grace let go of Thomas's head, Thomas again adjusted his hat. This factor weighs in the Defendants' favor.

The Court turns to the second factor: whether Thomas posed an immediate threat to the safety of the officers when he moved his arm. The Defendants argue that Thomas posed a threat to their safety justifying the takedown because he did not follow orders to stop moving his arm. Pence Reply 5; Grace Reply 11.

The court of appeals' opinion in *McCaig* is particularly instructive. *McCaig v. Raber*, 515 F.App'x 551 (6th Cir. 2013). The plaintiff alleged an excessive force claim based on the

officer's use of a takedown maneuver that resembled a bear hug.  *Id.* at 553.  The court of appeals affirmed the district court's denial of qualified immunity:

> reviewing the facts in the light most favorable to McCaig, a reasonable jury could find that Officer Raber's use of a takedown maneuver was not objectively reasonable and thus constituted a violation of McCaig's rights under the Fourth Amendment.  McCaig was unarmed.  In his version of the facts, he made no aggressive gestures or statements, attempted to cooperate, offered no resistance, and stated that he would 'go easy.'  Although McCaig admits that he did not put his hand behind his back as required by Officer Raber (because he was being restrained from doing so) and 'jerked away' when Officer Raber screamed loudly in his ear, a reasonable jury could find these facts insufficient to justify Officer Raber's use of force.

515 F.App'x at 555.  Similarly, the court of appeals affirmed a denial of qualified immunity for an officer who used a takedown maneuver on a handcuffed person.  *Meirthew v. Amore*, 417 F.App'x 494, 497 (6th Cir. 2011)  ("While she was non-compliant in refusing to spread her feet, a reasonable jury could find that Meirthew posed no danger and the use of the arm-bar takedown was unreasonable under the circumstances.").

Viewing the evidence in the light most favorable to Thomas, a reasonable jury could conclude that Thomas posed no threat to the officers when he moved his casted arm, even though he had been told not to move.  Thomas was unarmed, and he told officers that they had no reason to fear his casted arm because "It's going to hurt me more than it's going to hurt you all."  Further, Grace's deposition reveals that he did not use the takedown maneuver on Thomas because he felt threatened by him.  Rather, Officer Grace testified that he used the takedown maneuver because Thomas did not obey his order not to move his arm:

> Q: Did you feel threatened by his arm?  I mean if that –
> A: Slightly.  But I don't – I don't think it was – if it was – if it was threatening enough of a movement, there wouldn't have been as much warning.  We wouldn't have given him at least three chances to – to stop what he was doing.
> Q: But – so basically what you're saying is because he didn't follow your order you took him to the ground?
> A: Yes.

Q: Not because you were threatened?

A: Well, if he continues to swing his arm in our direction and we don't know his intent at the time, then it is possible that he might be testing us and – and later assault us so far.

Q: But he wasn't in the process of assaulting you?

A: No. So to prevent an assault from occurring, we used a control hold to place him on the ground.

Grace Dep. 75. Although Thomas admitted that he moved his arm after the officers told him not to, a reasonable jury could find that fact insufficient to justify Officer Grace's use of the takedown maneuver. This factor weighs in Thomas's favor.

A reasonable jury could find that Grace's use of a takedown maneuver was not objectively reasonable under the circumstances, and thus violated Thomas's Fourth Amendment right to be free from excessive force. The Court finds that a genuine issue of fact remains for whether Officer Grace violated Thomas's constitutional right to be free from excessive force by his use of the control hold.

Continuing with the second factor, the Court will now address whether Thomas posed an immediate to the safety of the officers once he was on the ground.

Pence argued that Thomas struggled with the officers during the takedown, and even if Pence did punch Thomas, that force was not excessive. Pence Reply 5.

The court of appeals' opinion in *Lawler* provides guidance. *Lawler v. City of Taylor*, 268 F.App'x 384, 387 (6th Cir. 2008). The plaintiff argued that the police officer's use of a takedown maneuver, coupled with the officer continuing to punch him while he was on the ground, amounted to excessive force. *Id.* at 387. The court of appeals affirmed the district court's denial of qualified immunity:

Accepting Lawler's testimony as true and giving his evidence the benefit of all reasonable inferences, we conclude that he has raised a cognizable excessive-force claim because a jury fairly could find that Lawler never posed a threat to Toro's safety (making Toro's take-down excessive) and could find that he was not

> a threat once he hit the floor (making Toro's knee strikes and elbow jab
> gratuitous).

*Id.* at 387. Similarly, the court of appeals affirmed a denial of qualified immunity for

officers whom the plaintiff alleged struck him after he was handcuffed on the ground.

*Pershell v. Cook*, 430 F.App'x 410, 415 (6th Cir. 2011) ("The blows to Pershell's body,

if intentionally applied, were not objectively reasonable, and therefore constituted a

violation of the Fourth Amendment.").

Viewing the evidence in the light most favorable to Thomas, a reasonable jury could

conclude that Thomas posed no threat to the Defendants once he was on the ground. After he

was on the ground, Officer Pence punched Thomas six times with a closed fist while he was

already on the ground, and Thomas was not resisting when he was on the ground. Thomas Dep.

56 – 57. After he was on the ground, Officer Grace put his knee at Thomas's neck, that Officer

Grace used his hand to bang Thomas's casted arm on the ground, and that Officer Grace pulled

his hair while he was on the ground. Thomas Dep. 57 – 58. This factor weighs in Thomas's

favor.

A reasonable jury could find that Officer Grace's actions in putting his knee in Thomas's

neck, using his hand to bang his casted arm, and pulling Thomas's hair were not objectively

reasonable under the circumstances, and thus violated Thomas's Fourth Amendment right to be

free from excessive force. Likewise, a reasonable jury could find that Officer Pence's punching

of Thomas after he was already on the ground was not objectively reasonable under the

circumstances, and thus violated Thomas's Fourth Amendment right to be free from excessive

force. The Court finds that a genuine issue of fact remains for whether Officer Grace violated

Thomas's constitutional right to be free from excessive force by putting his knee in his back,

banging his casted arm, and pulling Thomas's hair when he was on the ground. The Court finds

that a genuine issue of fact remains for whether Officer Pence violated Thomas's constitutional right to be free from excessive force by punching him when he was on the ground.

Having found genuine issues of material fact for whether Officers Grace and Pence violated Thomas's right to be free from excessive force, the Court now addresses the second prong of the qualified immunity analysis: whether that right was clearly established. *See Pearson*, 555 U.S. at 236.

The court of appeals has held that "the right to be free from excessive force is a clearly established Fourth Amendment right." *Neague v. Cynkar*, 258 F.3d 504, 507 (6th Cir. 2001). Specifically, the right to be free from excessive force involving a takedown maneuver was clearly established at the time of this incident. *See McCaig*, 515 F.App'x at at 555; *see also*, *Meirthew*, 417 F.App'x at 499 ("Moreover, our prior opinions clearly establish that it is unreasonable to use significant force on a restrained subject, even if some level of passive resistance is presented."). Similarly, the right to be free from excessive force after being subdued was clearly established at the time of this incident. *Shreve v. Jessamine Cnty. Fisc. Ct.*, 452 F.3d 681, 688 (2006) ("Cases in this circuit clearly establish the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest.").

The Court finds that Thomas has met his burden of overcoming the Defendants' qualified immunity defense. Officer Grace is not entitled to qualified immunity based on Thomas's claim in Count III. Officer Pence is not entitled to qualified immunity based on Thomas's claim in Count III. The Court will deny summary judgment to the Defendants on Count III of Thomas's claim.

G. Counts IV – X

The Plaintiffs did not respond to the Defendants' arguments regarding Counts IV – X. The Plaintiffs have abandoned these claims.

The Count will grant summary judgment to the Defendants on Counts IV through X of the complaint.

### H. Counts XI and XII: Negligence and gross negligence

Count XI of the Plaintiffs' complaint alleges negligence. Compl. 20 – 22. Count XII of the Plaintiffs' complaint alleges gross negligence. *Id.* at 22 – 23. The Defendants argue that the negligence and gross negligence claims should be dismissed as "logically and doctrinally unsupportable" because they arise out of the same conduct as the excessive force claim. Grace Reply 14; Pence Mem. 23 – 24.

The Plaintiffs argue:

> A reasonable trier of fact could conclude that Defendant officers were negligent in their gathering of information in this case, or that they were negligent in applying to the facts presented to them when Thomas and Forrest exited Thomas' home. A reasonable trier of fact could further conclude that the Defendant officers were negligent in failing to ask a single question about the home invasion, and prolonging the detention of Plaintiffs to an unreasonable amount of time. A reasonable trier of fact could also find that Defendant Officers did not need to handcuff Plaintiffs or point guns at them – that the detention could have been done in a more reasonable and less intrusive manner – and that the failure to do so was negligence on the part of Defendant Officers.

Pls.' Resp. 18. The Plaintiffs did not cite to a single case that would support their argument that police officers could be held liable for what amounts to a "negligent investigation" claim.

This Court routinely dismisses negligence claims against police officers when the alleged negligence arises out of the same conduct supporting the excessive force claim. *Coitrone v. Murray*, 2015 WL 2384298 *1, *9 (W.D. Ky. May 19, 2015); *Turner v. Hill*, 2014 WL 549462 *1, *10 (W.D. Ky. Feb. 11, 2014); *Ali v. City of Louisville*, 2006 WL 2663018 *1, *8 (W.D. Ky. 2006). "There is no such thing as a negligent battery," and allowing a negligence claim to

proceed based on the same conduct as the alleged excessive force conduct is "logically and doctrinally unsupportable." *Coitrone*, 2015 WL 2384298 at *9.

The Plaintiffs' negligence and gross negligence claims are "logically and doctrinally unsupportable" as they are premised on the same conduct underlying the excessive force claim. The Court will grant summary judgment to the Defendants on Counts XI and XII of the Plaintiffs' complaint.

V.      Conclusion

The Court will deny the Plaintiffs' motion to compel.

The Court will grant in part and deny in part Grace's motion for summary judgment. The Court will deny summary judgment to Grace based on qualified immunity on Thomas's claim in Count III.   The Court will grant summary judgment to Grace on Forrest's claim in Count III. The Court will grant summary judgment to Grace on all other claims.

The Court will dismiss the official capacity claims against Grace, with prejudice.  The Court will dismiss Counts I, II, IV – XII of the Plaintiffs' complaint against Grace, with prejudice.  The Court will dismiss Forrest's claim against Grace in Count III, with prejudice.

The Court will grant in part and deny in part Pence's motion for summary judgment.  The Court will deny summary judgment to Pence based on qualified immunity on Thomas's claim in Count III.  The Court will grant summary judgment to Pence on Forrest's claim in Count III. The Court will grant summary judgment to Pence on all other claims.

The Court will dismiss the official capacity claims against Pence, with prejudice.  The Court will dismiss Counts I, II, IV – XII of the Plaintiffs' complaint against Pence, with prejudice.  The Court will dismiss Forrest's claim against Pence in Count III, with prejudice.

The Court will refer this matter to the magistrate judge for mediation.

August 15, 2016

**Charles R. Simpson III, Senior Judge**
**United States District Court**